**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SUBPOENA TO TESTIFY AT | ) | |
| A DEPOSITION IN A CIVIL | ) | |
| ACTION ISSUED TO | ) | Misc. No. 1:17-mc-00007-TSE-IDD |
| THOMAS JEFFERSON HIGH SCHOOL | ) | |
| FOR SCIENCE & TECHNOLOGY, | ) | (D. Mass. Case No 1:14-cv-14176-ADB) |
| | ) | |

## MEMORANDUM IN SUPPORT OF CROSS MOTION TO TRANSFER AND OPPOSITION TO MOTION TO QUASH SUBPOENA

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, Students for Fair Admissions, Inc. ("SFFA") respectfully submits this memorandum in support of SFFA's cross motion to transfer and its opposition to the motion to quash of Fairfax County Public Schools ("FCPS") on behalf of Thomas Jefferson High School for Science & Technology ("TJHS"). SFFA has conferred with FCPS, which opposes SFFA's motion to transfer. Indeed, FCPS has refused even to negotiate with SFFA regarding the scope and timing of the subpoena. This senseless attempt to obstruct discovery is legally untenable. SFFA is seeking a declaratory judgment that will protect *TJHS's own students* against racial discrimination in the admissions process, an opportunity that FCPS should have welcomed. Instead, FCPS pursued this meritless motions practice, making unsubstantiated burden arguments and blanket assertions that TJHS—one of the top high schools in the country with many Asian-American students and that consistently sends students to Harvard—has *no* relevant information. The Court should deny FCPS's motion to quash and grant SFFA's motion to transfer.

## BACKGROUND

On November 17, 2014, SFFA—an organization of more than 21,000 students, parents, and others—sued Harvard College ("Harvard"), alleging that Harvard's use of race in its admissions process violates Title VI of the Civil Rights Act of 1964. *See Students for Fair Admission, Inc. v. President & Fellows of Harvard College*, No 1:14-cv-14176-ADB (D. Mass). In particular, SFFA alleges that Harvard is "employing an undergraduate admissions policy that intentionally discriminates against Asian-American applicants on the basis of race or ethnicity," Doc. 2-2 at 101, ¶ 429, by imposing a significantly higher bar for admissions than it does for other racial groups and by enforcing a quota on the number of Asian-American students it admits, *id.* at 43-67, ¶¶ 200-287.

In its answer, Harvard conceded that it considers race in admissions decisions. *See* Ex. A at 25, 34, ¶¶ 147, 196. This case thus turns on whether Harvard can satisfy strict scrutiny by proving that its use of race is "narrowly tailored to further compelling governmental interests." *Fisher v. Univ. of Texas at Austin*, 133 S. Ct. 2411, 2419 (2013). Because strict scrutiny is a "searching examination" that requires the court to give "close analysis to the evidence of how the process works in practice," there must be a complete record with evidence sufficient to understand Harvard's admissions decisions. *Id.* at 2421; *see also Grenier v. Jonas*, 2011 WL 1791093, at *2 (D. Vt. May 10, 2011) ("The great weight of the policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery.") (quoting *Floyd v. City of New York*, 739 F. Supp. 2d 376, 381 n.21 (S.D.N.Y. 2010)). Thus, SFFA is entitled to extensive fact discovery into Harvard's admissions practices.

One of the key points of discovery concerns the experiences of high school guidance counselors and other school officials who are witnesses to Harvard's discriminatory admissions

practices. As SFFA's complaint alleges, many guidance counselors and advisors "recognize that discrimination against Asian Americans occurs at elite universities such as Harvard and thus tell Asian Americans to hide their identity, to emphasize personal characteristics that avoid Asian stereotypes, and, in many cases, to lower their expectations and apply elsewhere." Doc. 2-2 at 57, ¶ 252. For example, one high school guidance counselor advised a Korean student with near-perfect test scores not to apply to the Ivy League because "it was a long shot at best" and so he should "lower his expectations to second- and third-tier schools." *Id*. at 63-64, ¶¶ 276-77. Such views are so widespread that even the Princeton Review advises that

> If you are an Asian American—or even if you simply have an Asian or Asian-sounding surname—you need to be careful about what you do and don't say in your application…. You need to avoid being an Asian Joe Bloggs. Asian Joe Bloggs is an Asian American applicant with a very high math SAT score, a low or mediocre verbal SAT score, high math- or science-related SAT II scores, high math and science grades, few credits in the humanities, few extracurricular activities, an intended major in math or the sciences, and an ambition to be a doctor, an engineer, or a research scientist. The more you sound like this person, the more likely admissions officers will be to treat you as part of the 'Asian invasion' and reject your application, or at the very least make you compete against other Asian applicants with similar characteristics, rather than against the applicant pool as a whole.

*Id*. at 58, ¶¶ 254-55.

In order to obtain discovery on these issues, SFFA served subpoenas on four high schools: (1) TJHS in Alexandria, Virginia; (2) Stuyvesant High School in New York, New York; (3) Boston Latin School in Boston, Massachusetts; and (4) Monta Vista High School in Cupertino, California. *See* Exs. B-E. Each subpoena included the same five document requests, which seek evidence of racial discrimination by Harvard against the schools' students. SFFA sent subpoenas to these schools because they are among the best high schools in the nation, they regularly send their students to the top universities in the country, including Harvard, and they enroll a student body with a high proportion of Asian Americans. *See* U.S. News & World

Report, National Rankings, Best High Schools (2016), https://goo.gl/zNEdGi. For example, TJHS is the number one high school in the country, according to Newsweek, *see America's Top High School 2016*, Newsweek, https://goo.gl/gYvUha, and has a student body that is more than 60 percent Asian American, *see* U.S. News & World Report, Thomas Jefferson High School for Science and Technology (2016); *see also* https://goo.gl/f0LDZY; *see also* T. Rees Shapiro, *Asian Students Dominate Admissions to Elite Thomas Jefferson High School*, Wash. Post, Mar. 31, 2015, https://goo.gl/qGegtu ("Asian American students will make up 70 percent of the incoming freshman class at [TJHS], the highest percentage ever for the elite magnet school in Northern Virginia."). TJHS and the other three schools thus are likely to be witnesses to discrimination by Harvard against their own students.

On March 23, 2017, FCPS filed a motion to quash, arguing that the subpoena places an undue burden on FCPS and seeks irrelevant and duplicative documents. On March 27, 2017, Boston Latin High School notified SFFA that it would be filing a motion to quash in the District of Massachusetts. SFFA has not yet heard from Stuyvesant High School or Monta Vista High School.

**ARGUMENT**

The Court should transfer this action to the District of Massachusetts, which is reviewing the underlying case, because doing so will promote judicial economy, prevent inconsistent judicial decisions, and impose minimal burden on FCPS. Alternatively, the Court should deny FCPS's motion to quash because SFFA's subpoena seeks highly relevant, nonprivileged evidence that is solely in TJHS's possession and because complying with the subpoena will impose minimal burden on FCPS.

**I.     The Court Should Transfer This Action to the District of Massachusetts**

Under the federal rules, any party may serve a subpoena commanding a nonparty to

"attend and testify" or to "produce designated documents." Fed. R. Civ. P. 45(a)(1)(A)(iii). If the nonparty files a motion to quash with a district court that did not issue the subpoena, that court may transfer the motion to the issuing court if "the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Where, as here, the nonparty does not consent to the transfer, the district court will resolve the motion to transfer by "balanc[ing] the interest of local resolution against factors such as judicial economy and risk of inconsistent rulings." *Venus Med. Inc. v. Skin Cancer & Cosmetic Dermatology Ctr. PC*, 2016 WL 159952, at *2 (D. Ariz. Jan. 14, 2016); *FTC v. A+ Fin. Ctr., LLC*, 2013 WL 6388539, at *3 (S.D. Ohio Dec. 6, 2013) (same). Those interests warrant a transfer here.

*First*, transfer will avoid the potential for inconsistent rulings. SFFA has issued similar subpoenas to high schools in California, New York, Massachusetts, and Virginia. One of these will soon be the subject of a motion to quash before the District of Massachusetts. And if either of the other high schools files a similar motion, SFFA will seek to transfer these actions to the District of Massachusetts too. Transferring this action to the District of Massachusetts thus will ensure that SFFA and the similarly situated high schools are not subject to inconsistent rulings. *See Venus Med. Inc.*, 2016 WL 159952, at *3 ("Because two motions involving substantially similar issues are pending before two different courts, the danger of inconsistent rulings is present. This factor militates heavily in favor of transfer."); *Valle del Sol, Inc. v. Kobach*, 2014 WL 3818490, at *4 (D. Kan. Aug. 4, 2014) ("[I]dentical issues have arisen in discovery in multiple districts, with the possibility that multiple courts will issue varying, and potentially inconsistent rulings, weighing heavily in favor of transfer."); *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014) (same); *Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555, at *7 (D. Nev. Aug. 15, 2014) (same).

*Second*, transfer will conserve judicial and party resources. The underlying action is more than two years old and already has involved numerous discovery disputes between the parties. The District of Massachusetts unquestionably is "more familiar with the issues remaining in the case, the history of discovery, [and] the relevance of the documents sought by [SFFA]." *Venus Med. Inc.*, 2016 WL 159952, at *3; *Wultz*, 2014 WL 2257296, at *7 (transferring the action to a judge that was "in a better position to rule on [the] motion to quash or modify the subpoena due to her familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation"). Transfer also will "avoid disrupting the issuing court's management of the underlying litigation," given that the District of Massachusetts will soon "rule[] on issues presented by [FCPS's] motion" and "the same issues are likely to arise in discovery in [other] districts." Fed. R. Civ. P. 45(f) advisory committee's note (2013); *see A+ Fin. Ctr., LLC*, 2013 WL 6388539, at *3 (same).

*Third*, transfer will not impose an undue burden on FCPS. "Transferring a *motion* to the jurisdiction where the underlying litigation is pending that will require few, if any, modifications of the written submissions, does not rise to the level of unfair prejudice." *Wultz*, 2014 WL 2257296, at *6 (emphasis in original). Additionally, "the Advisory Committee encourages judges to 'permit telecommunications' to minimize travel costs after a Rule 45(f) transfer," *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 430 (N.D. Cal. 2014) (quoting Fed. R. Civ. P. 45 advisory committee's note), which SFFA would not oppose. In any event, to the extent an in-person hearing is required in Boston, this will not be a heavy burden for FCPS, which has an annual budget of $2.7 billion, *see About FCPS*, Fairfax County Public Schools, https://goo.gl/rFso3z, and has hired a global law firm to represent it in this matter.

Thus, because transferring this action to the District of Massachusetts "promotes judicial

economy, prevents inconsistent judicial decisions, and does not impose any meaningful burden on [FCPS]," *Zynga*, 2014 WL 4079555, at *8; *Moon Mountain Farms, LLC*, 301 F.R.D. at 430 (same), the Court should grant SFFA's motion to transfer.

## II.     Alternatively, the Court Should Deny the Motion to Quash

If the Court declines to transfer the action to the District of Massachusetts, then it should deny FCPS's motion to quash. Under the Federal Rules of Civil Procedure, "[t]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Singletary v. Sterling Transp. Co., Inc.*, 289 F.R.D. 237, 241 (E.D. Va. 2012). Thus, a party serving a subpoena on a nonparty may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevance is construed broadly to include '[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Cappetta v. GC Servs. Ltd. P'ship*, 2008 WL 5377934, at *2 (E.D. Va. Dec. 24, 2008) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978)). A request for discovery "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Id* (citation omitted).

Under Rule 45, a court may quash or modify a subpoena that: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "The party seeking to quash the subpoena bears the burden of demonstrating that the requirements of Rule 45 are satisfied." *Malibu Media, LLC v. John Does 1–15*, 2012 WL 3089383, at *5 (E.D. Pa. July 30, 2012); Wright & Miller, *Federal Practice & Procedure* § 2459 (same). "'In meeting this burden, such party may not rely on conclusory allegations or mere

statements in briefs.'" *Ellis v. Arrowood Indem. Co.*, 2014 WL 4365273, at *6 (S.D. W. Va. Sept. 2, 2014) (quoting *Suggs v. Whitaker*, 152 F.R.D. 501, 505 (M.D.N.C. 1993)). Rather, the party must provide "specific demonstration of facts supporting the requested protection," preferably "through affidavits from knowledgeable persons." *Id*. If a party fails to meet this burden, the party's motion will be denied. *Id*.

Here, FCPS argues that SFFA's subpoena should be quashed because it (1) places an undue burden on FCPS; (2) seeks irrelevant and duplicative documents; (3) seeks documents protected by the attorney-client privilege; and (4) imposes an unreasonable time limit for compliance. These arguments fail.

### A.     Compliance with the Subpoena Will Not Place an Undue Burden on FCPS.

In a single paragraph, FCPS summarily claims that responding to the subpoena would "place enormous and undue burden and expense on FCSB" and "divert significant resources from its Department of Information Technology." Mot. to Quash at 4. These conclusory statements are woefully insignificant. "To prevail on the grounds of burdensomeness or breadth, the objecting party must do more to carry its burden than make conclusory and unsubstantiated arguments." *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2014 WL 1660386, at *3 (S.D. W. Va. Apr. 22, 2014). Courts will consider an unduly burdensome objection only when the objecting party demonstrates how discovery is "overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden." *Convertino v. United States Dep't of Justice*, 565 F. Supp. 2d 10, 14 (D.D.C. 2008); *see also Bank of Mongolia v. M & P Global Fin. Servs., Inc.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009) (same); *Cory v. Aztec Steel Building, Inc.*, 225 F.R.D. 667, 672 (D. Kan. 2005) (same). FCPS has submitted no affidavit or detailed analysis of any kind to justify the burdens it claims it will suffer.

Regardless, FCPS's claims of burden must fail. SFFA is seeking to conduct a single deposition and obtain relevant documents that will require, at most, an electronic search of a handful of custodians' inboxes for key documents discussing discrimination by Harvard against Asian applicants. These are minimal burdens for an institution like FCPS. Indeed, FCPS "is the third largest employer in Virginia, with 24,600 full-time staff positions," has an annual budget of $2.7 billion, and has hired a global law firm with more than 2,000 attorneys to represent it in this proceeding. *See* About FCPS, Fairfax County Public Schools, https://goo.gl/rFso3z. It is highly unlikely that responding to SFFA's five, narrowly drawn document requests will impose a significant financial or staffing burden on FCPS. Moreover, SFFA expressed its willingness to negotiate the scope of the requests to minimize the burden on TJHS.

**B.   The Subpoena Seeks Highly Relevant Documents that Cannot Be Obtained Elsewhere.**

FCPS argues that it should not have to produce documents responsive to Requests 2, 4, and 5 because these requests are not relevant to SFFA's claims. Mot. to Quash at 5-6. The documents sought in these requests, however, unquestionably fall within the Federal Rules' "broad" understanding of "relevance." *Cappetta*, 2008 WL 5377934, at *2 ("Relevance is construed broadly to include '[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"); *see also Educ. Fin. Council v. Oberg*, 2010 WL 3719921, at *2 (D.D.C. Mar. 8, 2010) ("A court with jurisdiction over a discovery dispute for an action pending in a different district generally has limited exposure to and understanding of the primary action, and should be wary of unduly restricting the scope of discovery.") (citation omitted).

Request 2 seeks communications among TJHS employees "regarding Harvard's use of race in the admissions process." FCPS claims that the request is not relevant because TJHS "is

not a party to the case and no students from Thomas Jefferson High School are the subject of the alleged discrimination." Mot. to Quash at 5. As an initial matter, FCPS incorrectly asserts that this action is brought solely on behalf of the Asian-American student identified in SFFA's complaint. SFFA has brought this complaint for declaratory and injunctive relief on behalf of its *members*—students, parents, and concerned citizens (more than 21,000 in total) from all over the country. *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (an association may seek a "declaration, injunction, or some other form of prospective relief" on behalf of its members). The relief SFFA seeks will directly benefit the students at TJHS, including its Asian-American students who are disadvantaged by Harvard's race-based admissions process. *See, e.g.*, Doc. 2-2 at 119 (requesting a "permanent injunction prohibiting Harvard from using race as a factor in future undergraduate admissions decisions").

In any event, even if this lawsuit had no effect on TJHS students, whether Harvard has discriminated against other similarly situated students unquestionably is relevant to SFFA's claims. This type of "comparator evidence is relevant to prove that [Harvard] discriminated against other [students] and therefore had a discriminatory motive, that there was a pattern or practice of discrimination, or that [Harvard] implemented policies that encouraged or permitted discrimination." *Paananen v. Cellco P'ship*, 2009 WL 3327227, at *5 (W.D. Wash. Oct. 8, 2009); *cf. Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990) ("[P]atterns of discrimination against a group of employees increas[es] the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive."); *Calobrisi v. Booz Allen Hamilton, Inc.*, 660 F. App'x 207, 210 (4th Cir. 2016) ("As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent.") (quoting *Spulak v. K Mart Corp.*, 894 F.2d

1150, 1156 (10th Cir. 1990)). In other words, whether employees of TJHS have witnessed discrimination by Harvard against its students on the basis of their race—students who are in the same situation as SFFA's members—is highly relevant to SFFA's claims of discrimination.

Request 4 seeks documents "describing alleged discrimination by colleges, including … Harvard, against persons of Asian descent from Thomas Jefferson High School … in the college admissions process." As an initial matter, FCPS does *not* claim that documents describing discrimination by Harvard against TJHS students are irrelevant. *See* Mot. to Quash at 6. Nor could it. *See supra* at 10-11. Instead, FCPS argues that documents describing racial discrimination by colleges *in addition to* Harvard are "overly broad given SFFA's apparent focus on discrimination at Harvard." Mot. to Quash at 6. SFFA, however, seeks evidence of racial discrimination by universities against students at TJHS—either by specific universities or categories of universities, such as the Ivy League—because such information might apply equally to Harvard or lead to other evidence of discrimination by Harvard. That is all Rule 26 requires. *See Cappetta*, 2008 WL 5377934, at *2 ("Relevance is construed broadly to include '[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'").

Request 5 seeks documents concerning SFFA, Edward Blum (SFFA's president), or SFFA's litigation against Harvard. FCPS claims that such documents are not relevant because SFFA does not allege that TJHS or its students "were involved in the alleged discrimination or acted improperly as it relates to SFFA's claim." Mot. to Quash at 6. SFFA, of course, makes no such claim. SFFA seeks information concerning its organization and its lawsuit because that is the context in which communications regarding similar discrimination is likely to arise (*e.g.*, a guidance counselor at TJHS forwarding, discussing, or analyzing one of the numerous stories

about SFFA's lawsuit against Harvard). This standard discovery request fits comfortably within the federal rules' definition of "relevance." *See Cappetta*, 2008 WL 5377934, at *2.

Finally, FCPS argues that it should not have to produce documents under Request 1 (documents "prepared by [TJHS] concerning the racial composition of applicants, admitted persons, or enrollees to Harvard") or Request 3 (communications "to, from, or copying Harvard regarding the use of race in the admissions process") because SFFA "can obtain the documents and information from other sources." Mot. to Quash at 4. As an initial matter, it is not necessarily true that these documents are available from Harvard. Harvard would not possess, for example, documents *prepared by* TJHS analyzing the racial composition of applicants to Harvard. Nor is it certain that SFFA will capture the relevant communications between TJHS and Harvard through its document requests. In any event, "[m]erely because [a party] may be able to obtain certain information from other sources does not render the subpoena unnecessary." *Ellora's Cave Pub., Inc. v. Dear Author Media Network, LLC*, 308 F.R.D. 160, 162 (N.D. Ohio 2015). If responding to these documents does not impose an undue burden on FCPS there is no basis for it to resist the subpoena. *See* Fed. R. Civ. P. 45(d)(3)(A).[1]

### C. Concerns About Attorney-Client Privilege and Student Privacy Do Not Justify Quashing the Subpoena.

FCPS claims that the subpoena should be quashed because it "requests attorney client privileged information and confidential student records." Mot. to Quash at 7. These are not appropriate grounds for quashing a subpoena. FCPS, of course, need not produce documents that are properly protected by the attorney-client privilege. *See* Fed. R. Civ. P. 26(b)(1). But the mere

---

[1] To the extent that the Court accepts any of FCPS's arguments regarding burden or relevance, the proper remedy is not to quash the subpoena, but to modify it so as to cure any overbreadth. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("Generally, modification of a subpoena is preferable to quashing it outright."); *see, e.g.*, *Fadalla v. Life Auto. Prod., Inc*., 258 F.R.D. 501, 507 (M.D. Fla. 2007). Indeed, SFFA has offered to work with FCPS to try to alleviate any concerns about the scope of the requests, but FCPS refused to negotiate and insisted on quashing the subpoena entirely.

existence of such documents does not justify quashing the subpoena. "[T]he response to a subpoena that may call for privileged material is not to quash the subpoena, but rather to produce any non-privileged documents and to create a privilege log for the remaining documents." *Bianchi v. Tonigan*, 2012 WL 5906536, at *3 (N.D. Ill. Nov. 26, 2012). Nor does the fact that the subpoena may encompass documents from attorneys automatically nullify the discovery request. "Information received from or communicated to an attorney is not necessarily protected by the attorney-client privilege." *Metzler Contracting Co. LLC v. Stephens*, 642 F. Supp. 2d 1192, 1204 (D. Haw. 2009) (listing examples). If, for example, FCPS's attorneys received facts from a third party that are responsive to SFFA's subpoena, they are not privileged and must be produced. *Id*.

Moreover, the fact that some of FCPS's documents "may include confidential information" regarding students' "grades, test scores, and other sensitive information" is not a proper ground to quash the subpoena. FCPS can enter into the protective order in this case, which provides ample protection of third-party information. *See* Ex. F. Moreover, SFFA would not object to the initial redaction of students' personal information (name, contact information, and social security numbers). Protective safeguards to ensuring student privacy thus are readily available. FCPS cannot use the mere existence of such information to justify the wholesale rejection of the subpoena. Moreover, FCPS does not mention that SFFA's lawsuit seeks to end discrimination against high achieving Asian-American students, like those at TJHS.

### D. The Subpoena Provides a Reasonable Time for Compliance.

FCPS claims that the Court should quash the subpoena because it "fails to allow a reasonable time to comply." Mot. to Quash at 7-8 (quoting Fed. R. Civ. P. 45(c)(A)(i)). But like its undue-burden argument, FCPS's conclusory argument on timing is entirely insufficient. FCPS "submits no evidence in support of its argument that [four weeks] is an unreasonable period of time to respond to the requests," it "does not explain the steps it must take to gather the relevant

documents, or their volume," and it "submit[s] [no] affidavits or declarations by individuals who will have to collect the documents, outlining how it would be difficult to comply with the subpoenas in [four weeks]." *Canal Indem. Co. v. Glob. Dev., LLC*, 2014 WL 12496905, at *2 (W.D. Wash. Aug. 5, 2014).

Even if it had done so, however, FCPS's argument would still fail. "Although Rule 45 does not define 'reasonable time,' many courts have found fourteen days from the date of service as presumptively reasonable." *In re Rule 45 Subpoena Issued to Cablevision Systems Corp. Regarding IP Address 69.120.35.31*, 2010 WL 2219343 at *5 (E.D.N.Y. Feb. 5, 2010) (collecting cases). Given the narrow scope of SFFA's requests, four weeks was more than enough time for TJHS to respond. *See id.* Moreover, SFFA expressed its willingness to modify the timing of TJHS's response to the subpoena, which TJHS again refused even to negotiate.

\*       \*       \*

For the foregoing reasons, the Court should transfer this action to the District of Massachusetts, or in the alternative, deny FCPS's motion to quash.

- 15 -

Dated: April 3, 2017				Respectfully submitted,

						By: /s/ J. Michael Connolly

						J. Michael Connolly (VA 77632)
						Bryan K. Weir (VA 82787)
						CONSOVOY MCCARTHY PARK PLLC
						3033 Wilson Boulevard, Suite 700
						Arlington, VA 22201
						Tel: 703.243.9423
						Fax: 703.243.9423
						mike@consovoymccarthy.com
						bryan@consovoymccarthy.com

						Michael H. Park
						CONSOVOY MCCARTHY PARK PLLC
						3 Columbus Circle, 15th Floor
						New York, NY 10019
						Tel: 212.247.8006
						park@consovoymccarthy.com

						*Counsel for SFFA*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 37(E)**

Prior to filing this motion and consistent with Local Civil Rule 37(E), counsel for SFFA conferred with counsel for FCSB in a good faith attempt to resolve this matter without court intervention, but was unable to do so.

/s/ J. Michael Connolly
J. Michael Connolly

**CERTIFICATE OF SERVICE**

  I hereby certify that on April 3, 2017, a true copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

  Christopher T. Pickens (VSB No. 75307)
  HOGAN LOVELS US LLP
  Park Place II, Ninth Floor
  7930 Jones Branch Drive
  Mclean, VA 22102-3302
  Tel: (703) 610-6100
  Fax: (703) 610-6200
  christopher.pickens@hoganlovells.com

  *Counsel for the Fairfax County School Board on behalf of Thomas Jefferson High School for Science & Technology*

            /s/ J. Michael Connolly
            J. Michael Connolly