IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: <br><br> SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION ISSUED TO THOMAS JEFFERSON HIGH SCHOOL FOR SCIENCE & TECHNOLOGY | MISC NO.: 1:17-mc-00007-TSE-IDD <br><br> (D. Mass. Case No.: 1:14-cv-14176-ADB) |

**OPPOSITION TO CROSS MOTION TO TRANSFER AND
REPLY IN SUPPORT OF MOTION TO QUASH BY NON-PARTY
THOMAS JEFFERSON HIGH SCHOOL FOR SCIENCE & TECHNOLOGY**

Non-party Fairfax County School Board ("FCSB"), on behalf of one of its 27 high schools, Thomas High School for Science & Technology ("TJHS"), has moved this Court for an order, pursuant to Rule 45 of the Federal Rules of Civil Procedure, to quash a subpoena (the "Subpoena") issued by Students for Fair Admissions, Inc. ("SFFA"). The SFFA Subpoena directs TJHS to produce documents and provide 30(b)(6) deposition testimony in a case pending in the District of Massachusetts in which FCSB and TJHS have no involvement.

The Court should quash the Subpoena because it seeks irrelevant documents and information that can be (or has already been) obtained from other sources, and responding to the Subpoena would impose a significant and undue burden on non-parties FCSB and TJHS to search for, review, redact, comply with the Family Education Rights and Privacy Act ("FERPA"), and produce the requested documents or information. SFFA has failed to show that the material that it seeks from TJHS is relevant to SFFA's discrimination claims and has not articulated any reason to allow an unjustified "fishing expedition" into TJHS's files at FCSB's burden and expense. FCSB operates the Fairfax County Public Schools ("FCPS") and is not a party to the underlying litigation.

1

Additionally, there is no reason to transfer this motion to the District of Massachusetts as SFFA has requested. SFFA has failed to establish that there are any "exceptional circumstances" justifying such a transfer as required by Federal Rule 45; to the contrary, such a transfer would only serve to impose an additional burden on FCSB and TJHS. Accordingly, FCSB's motion to quash should be granted and SFFA's motion to transfer should be denied.

I.     This Court Should Grant the Motion to Quash.

Under Federal Rule of Civil Procedure 45, the court where compliance is required *must* quash or modify a subpoena if, among other things, it "fails to allow a reasonable time to comply," "requires disclosure of privileged or other protected matter," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d). All discovery sought under Rule 45 must satisfy the relevance and proportionality requirements articulated in Rule 26(b). *See Stoney Glen, LLC v. S. Bank & Trust Co.*, 2013 WL 5514293, at *4 (E.D. Va. Oct. 2, 2013) ("Although Rule 45 does not list irrelevance as a reason for quashing a subpoena, the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26."); *see also Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240–41 (E.D. Va. 2012).

Although Rule 26(b) applies to discovery from nonparties, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs," *Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998) (citing *Haworth, Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993)), and "the fact of nonparty status may be considered by the court when weighing the burdens imposed by the circumstances," *Tucker v. Am. Int'l Group, Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012) (quoting *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993)). Thus, the fact that discovery is being sought from a third or non-party weighs *against* permitting discovery. *See, e.g., Med. Components, Inc. v. Classic Med., Inc.*, 210 F.R.D. 175, 180 n.9 (M.D.N.C. 2002) ("The current

2

generally prevailing view is that the Court may first consider whether information should be obtained by direct discovery from a party, as opposed to from a non-party, and that the court should give special weight to the unwanted burden thrust upon non-parties when evaluating the balance of competing needs."); *see also Brown v. Mountainview Cutters, LLC*, 2016 WL 3045349, at *4 (W.D. Va. May 27, 2016) (finding that discovery sought through subpoenas to third parties while relevant was "disproportionate to the needs of the case" because the information could be obtained from a party "which would be the least burdensome source").

In evaluating whether a subpoena imposes an undue burden, courts have considered "such factors as relevance, the need of the party for the documents, the breadth of the document requests, the time period of the subpoena, and the particularity with which the documents are described and the burden imposed." *See Alexander v. F.B.I.*, 186 F.R.D. 21, 34 (D.D.C. 1998). As explained below, the requests in SFFA's subpoena are extremely broad, seek documents protected under FERPA, and seek duplicative information that can and should be obtained from Harvard. Additionally, the requests seek information that is irrelevant to SFFA's claims in the underlying lawsuit, and the production of these documents would impose a disproportionate burden on FCSB.

### A. SFFA's Requests are Not Narrow and Responding to Them Would Impose a Significant and Undue Burden on FCSB.

SFFA argues that it "is seeking to conduct a single deposition and obtain relevant documents that will require, at most, an electronic search of a handful of custodians' inboxes for key documents discussing discrimination against Asian applicants." (Opp'n at 9). Underlying this argument is SFFA's assertion that its requests are "narrowly drawn," but this assertion is contradicted by the text of the Subpoena. The Requests themselves are very broad.

1. All documents from the Relevant Period prepared by You concerning the racial composition of applicants, admitted persons, or enrollees to Harvard.

3

> 2. All communications from the Relevant Period by or among Your employees or agents regarding Harvard's use of race in the admissions process.
>
> 3. All communications from the Relevant Period to, from, or copying Harvard regarding the use of race in the admissions process.
>
> 4. All reports, examinations, accounts, analyses, complaints, or other documents from any time describing alleged discrimination by colleges, including but not limited to Harvard, against persons of Asian descent from Thomas Jefferson High School for Science & Technology in the college admissions process.
>
> 5. All communications during the Relevant Period concerning SFFA, the Plaintiff and its Representatives (including, but not limited to, Edward Blum), the Complaint, or this action (before or after it was filed).

(Subpoena at 8-9)

Just on the face of the requests, it is apparent that responsive documents, if they exist at all, could be in the possession of almost any FCSB employee at TJHS, as well as other FCSB employees that are not at TJHS. For example, in addition to guidance counselors and administrators, students often seek college recommendations and have discussions about the application process with their teachers, and there are more than 100 teachers at TJHS.[1]

The Subpoena also broadly defines "You" and "Your" as TJHS "and its members, directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals." (Subpoena at 5.) Similarly, the Subpoena broadly defines "Representative" as "*any and all* agents, servants and employees." (Subpoena at 4 (emphasis added)). This potentially includes FCSB employees at other locations, including employees in the school district's administrative offices who potentially would receive discrimination complaints (if they existed). In short, this is hardly a "handful of custodians' inboxes" as SFFA claims.

---

[1]  *See* US News and World Reports, *available at* https://www.usnews.com/education/best-high-schools/virginia/districts/fairfax-county-public-schools/thomas-jefferson-high-school-for-science-and-technology-20461 (noting the enrollment was over 1800 students and the student:teacher ratio was 17:1).

4

But not only would searching for the requested documents require searching the documents of far too many employees, FCSB would then have to divert staff resources and potentially engage outside counsel to review and identify responsive documents for production, at great expense. Moreover, given the nature of the requests, any documents identified as responsive also likely would contain confidential student information that is protected by FERPA. FERPA generally prohibits disclosure of personally identifiable information from education records without consent of a minor student's parent or guardian. 20 U.S.C.A. §§ 1232g(a) and (b)(1); 34 CFR § 99.30.[2]

Although there is an exception to the ordinary FERPA consent requirement to permit a school district to comply with a "lawfully issued subpoena," that exception would apply here only if FCSB made "a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek protective action." 34 C.F.R. § 99.31(a)(9)(i)-(ii). FERPA requires FCSB to notify parents when personally identifiable information is disclosed. Thus, FCSB would have to notify the parents of students whose information would be produced and would, as a practical matter, have to field their concerns and questions relating to disclosure of the information. And the parents of the students also may file their own objections to the production. Such FERPA notices are prepared by one employee in the FCPS Department of Special Services. Once the students are identified, letters (and translation if necessary) are sent by mail to the parent or guardian, and the employee keeps a record in the Department of Special Services that notice has been provided in accordance with

---

[2] Compliance with FERPA is also required under Virginia law. Under Virginia law, the Virginia Department of Education "shall develop and make publicly available on its website policies to ensure state and local compliance with the federal Family Educational Rights and Privacy Act (20 U.S.C. § 1232g) and state law applicable to students' personally identifiable information, including policies for (i) access to students' personally identifiable information[.]" Va. Code. Ann. § 22.1-287.02.

FERPA. The burden of providing and tracking these FERPA-required notices to perhaps hundreds of parents or guardians of current and former TJHS students is disproportionate.

Nor would it be enough to simply "redact[] students' personal information (name, contact information, and social security numbers)" as SFFA supposes in its Opposition. (Opp'n 13). Under FERPA, although it is true that FCSB would not be required to provide notice if the documents produced pursuant to the Subpoena could be "de-identified," redacting obvious identifiers does not necessarily suffice to de-identify a document. FERPA defines personally identifiable information to include, but not be limited to:

> (a) The student's name;
> (b) The name of the student's parent or other family member;
> (c) The address of the student or student's family;
> (d) A personal identifier, such as the student's social security number, student number, or biometric record;
> (e) Other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name;
> (f) *Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have knowledge of the relevant circumstances, to identify the student with reasonable certainty*; or
> (g) information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates.

34 CFR § 99.3 (emphasis added).

The Department of Education has stated that redacting direct identifiers is not sufficient for "de-identification":

> It is important to note that PII [personally identifiable information] may include not only direct identifiers, such as names, student IDs or social security numbers, but also any other sensitive and non-sensitive information that, alone or combined with other information that is linked or linkable to a specific individual, would allow identification. Therefore, simple removal of direct identifiers from the data to be released DOES NOT constitute adequate de-identification. Properly performed de-identification involves removing or obscuring all identifiable

information until all data that can lead to individual identification have been expunged or masked.[3]

The very nature of SFFA's requests call for information protected by FERPA. SFFA is seeking documents containing the academic information of students, and specifically relating to Asian students, a personal characteristic that would make the student's identity traceable (even after an attempt at de-identification). For example, letters of recommendation to Harvard are likely to contain personally identifiable information that is protected from disclosure, not to mention other personal information of the student that was provided to FCSB personnel with the expectation it would not be widely disclosed. Given the relatively small size of TJHS, it is possible that individual students still could be identified from the documents produced, even after direct identifiers on the face of the document are redacted. Thus, although FCSB may redact direct identifiers out of concerns for its students' information, doing so likely would not obviate the notice requirement under FERPA. The documents requested by SFFA are limited to a distinct subset of the TJHS student body, and information produced still could be "linked or linkable to a specific student that would allow a reasonable person . . . to identify the student with reasonable certainty." 34 CFR § 99.3.

In its brief, SFFA argues that FCSB failed to demonstrate the undue burden because it failed to provide a supporting affidavit. As explained above, the burden that would necessarily be involved in responding to the subpoena is apparent from the scope of the requests, the nature of documents requested, and the requirements of FERPA. No affidavit is needed to explain this burden. Similarly, SFFA touts repeatedly its stated willingness to "negotiate the scope of the requests," but during the meet and confer on FCSB's motion to quash, counsel for SFFA stated

---

[3]   Department of Education, Privacy Technical Assistance Center, Data De-Identification: An Overview of Basic Terms, *available at* http://ptac.ed.gov/sites/default/files/data_deidentification_terms.pdf.

7

that it would identify how to narrow the requests *after* FCSB looked for responsive documents. This still requires FCSB to undertake a burdensome search and review for documents in response to SFFA's overbroad requests, which is a burden FCSB should not have to bear.

> **B. The Documents Sought By SFFA Are Duplicative of Documents In Harvard's Possession, Are Not Relevant, And Impose A Disproportionate Burden On FCSB.**

Rule 26(b) limits the scope of discovery to those materials that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). The Court may quash a subpoena as overbroad if it "does not limit the [documents] requested to those containing subject matter relevant to the underlying action." *Brown*, 2016 WL 3045349 at *3 (citing *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, 2016 WL 1071016, at *5 (E.D. Va. March 17, 2016)). As explained below, the requested communications, documents, and deposition testimony are duplicative of information that could and should be obtained from Harvard, are not relevant to SFFA's claims, and/or would impose a disproportionate burden on FCSB to identify and produce.

FCSB discusses each document request in the subpoena below. But at the highest level, it is apparent that the information SFFA seeks can and should be obtained from Defendant Harvard. SFFA's Opposition states that it served a subpoena on TJHS and three other high schools to "seek evidence of racial discrimination by Harvard against the school's students." (Opp'n at 3). But any evidence of discrimination by Harvard, whether involving TJHS students or not, would be in Defendant Harvard's possession, not at TJHS. Indeed, SFFA can request, and perhaps already has requested, Harvard's admission files relating to TJHS students *from Harvard* if it believes that is relevant; documents at TJHS are not going to show the reasons why Harvard admitted or rejected any TJHS student.

8

Turning to the individual requests, Request No. 1 seeks "[a]ll documents from the Relevant Period [since September 1, 2011] prepared by You concerning the racial composition of applicants, admitted persons, or enrollees to Harvard." (Subpoena at 8.) On its face, it is clear that SFFA can get complete information about "the racial composition of applicants, admitted persons, or enrollees to Harvard" from Harvard itself. Any information in FCSB's possession on that topic would be entirely redundant of Harvard's information about the racial composition of its own applicants and students. *See, e.g.*, *Massachusetts Nurses Ass'n v. Radius Specialty Hosp., LLC*, No. 14-cv-13686, 2016 WL 6090713, at *3 (D. Mass. Oct. 18, 2016 (citing cases); *see also* Fed. R. Civ. P. 26(b)(2)(C) (a court must limit discovery if it "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

Request No. 2 seeks "all communications from the Relevant Period by or among Your employees or agents regarding Harvard's use of race in the admissions process." (Subpoena at 8.) As FCSB explained in its opening brief, there is no allegation that any student at TJHS was the subject of racial discrimination by Harvard. (FCSB Br. in Supp. at 5). Although SFFA tries to argue that its lawsuit, if successful, may benefit students at TJHS, SFFA does not dispute that it is not alleging discrimination against TJHS students. (Opp'n at 9-10). Nonetheless, SFFA argues that information as to "whether Harvard has discriminated against [TJHS students]" is "unquestionably relevant" as "comparator evidence." (Opp'n at 10).

But even if discrimination against TJHS students, who are not identified by SFFA as the subject of discrimination, was relevant, SFFA is seeking evidence of any such discrimination from the wrong source. Evidence of any such discrimination would be maintained by Harvard or, potentially, in the possession of students actually alleging discrimination, and would not be at

9

FCSB or TJHS. Instead of seeking this information from FCSB, SFFA should obtain this information from Harvard or from students who have alleged that they are the victims of discrimination by Harvard (none of whom, as far as FCSB knows or SFFA has disclosed, attended TJHS). *Cf. Calobrisi v. Booz Allen Hamilton, Inc.*, 660 App'x 207, 210 (4th Cir. 2016) ("[T]he testimony of *other employees* about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent." (emphasis added)).

Request No. 3 seeks "[a]ll communications from the Relevant Period to, from, or copying Harvard regarding the use of race in the admissions process." (Subpoena at 9). By definition, any communication to, from, or copying Harvard would be available from Harvard. SFFA asserts that "it is not necessarily true that these documents are available from Harvard." (Opp'n at 12). This argument is without merit because Request No. 3 specifically seeks communications "to, from, or copying Harvard," (Subpoena, at 9). FCSB should not bear the burden of producing documents that can and should be, and might already have been, produced by Defendant Harvard. *See, e.g.*, *Massachusetts Nurses Ass'n*, 2016 WL 6090713, at *3; *see also* Fed. R. Civ. P. 26(b)(2)(C).

SFFA also has failed to demonstrate the relevance of Request No. 4, which seeks "[a]ll reports, examinations, accounts, analyses, complaints, or other documents from any time describing alleged discrimination by colleges, including but not limited to Harvard, against persons of Asian descent from Thomas Jefferson High School for Science & Technology in the college admissions process." (Subpoena at 4). Harvard is the only defendant in SSFA's lawsuit, and yet this request seeks documents relating to alleged discrimination by colleges other than Harvard, who are not parties, against students of TJHS, who as explained above are not alleged by SFFA to have been the subject of any discrimination even by Harvard.

In fact, the best SFFA can say about documents relating to other colleges is that they "might apply equally to Harvard or lead to other evidence of discrimination by Harvard." (Opp'n at 11). And as noted above, SFFA has not even alleged that TJHS students were subject to discrimination by Harvard. This is a classic fishing expedition and should not be permitted. *Gilbertson v. Jones*, No. 3:16-cv-00255, 2016 WL 6518659, at *2 (E.D. Va. Sept. 22, 2016). Moreover, even if the Court were to conclude that a subset of documents within this request, relating to Harvard, were relevant, the burden on FCSB to identify, review, redact, provide notice, and produce those documents would be disproportionate to their value. Any documents would, at most, indicate allegations or perceptions of discrimination and not be actual evidence of any discrimination, which if it exists, can be obtained only from Harvard or students alleging discrimination.

Finally, Request No. 5 seeks "[a]ll communications during the Relevant Period concerning SFFA, the Plaintiff and its Representatives (including but not limited to Edward Blum), the Complaint or this action (before or after it was filed)." (Subpoena at 9). SFFA's reason for requesting these documents is entirely speculative.

SFFA contends that any mention of SFFA, its president, or its lawsuit against Harvard would necessarily involve discussions of discrimination that are relevant to its claims in the underlying lawsuit. (Opp'n at 11-12). There is no reason to believe that is true, and the mere mention of SFFA or the underlying litigation does not make a document relevant to SFFA's underlying claims. Nor does SFFA have any reason to think there are any communications at TJHS discussing SFFA, its president, or its lawsuit—other than privileged communications occurring after SFFA served TJHS with the Subpoena. This is a fishing expedition, and FCSB should not be put through the burden and expense of responding to it.

Because the requests are duplicative, seek documents that are not relevant, and/or are disproportionate, the Subpoena should be quashed.

### C. The Subpoena Does Not Provide Reasonable Time For Compliance.

As explained in Section I.A, *supra*, FCSB would have to engage in a lengthy process to gather, review, de-identify and/or provide notice of, and produce responsive documents.  Due to the breadth, scope, and timeframe of the requests, FCSB expects that a large number of custodians would be involved and a high volume of documents would be collected for review.  FCSB does not have staff members dedicated to document review and production; thus, staff members, the majority of whom are teachers providing direct services to students, would be tasked with searching for any responsive documents in addition to performing their day-to-day functions for FCSB.

FCSB would also have to engage in the laborious and judgment-laden de-identification process and/or provide the notice that FERPA requires to parents of any students whose information is contained in responsive documents. As explained above, to disclose personally identifiable information from an education record without written consent, FERPA requires FCSB to make a "reasonable effort" to provide notification of disclosure of protected information to give a student time to move to object to the disclosure.  FERPA does not define what amount of notice constitutes a "reasonable effort," but the Department of Education has applied a multifactor, totality-of-the-circumstances inquiry to determine whether "reasonable effort" was made, and whether an organization has made a "reasonable effort" is decided on a case-by-case basis.[4]  Four weeks is not enough time for FCSB to locate and review documents

---

[4] *See* Letter from Family Compliance Office to Youngstown University (Feb. 16, 1999) (footnotes omitted), *available at* http://www2.ed.*gov*/policy/gen/guid/fpco/ferpa/library/youngstown_oh.

12

potentially responsive to SFFA's broad requests, and either de-identify them (if that is even possible) or provide reasonable notice of production to parents of students whose information is contained in those documents, and then produce the documents.

* * *

For all of these reasons, the motion to quash should be granted.

## II. No Exceptional Circumstances Exist To Justify Transfer to the District of Massachusetts, and the Motion to Transfer Should be Denied.

Federal Rule 45(f) authorizes courts to transfer a subpoena-related motion only "if the person subject to the subpoena consents or if the court finds exceptional circumstances." FCSB does not consent to the transfer. (Opp'n at 5). Thus, SFFA must demonstrate that "exceptional circumstances" exist that support transfer to the District of Massachusetts, a district with which non-parties FCSB and TJHS have no connection. Fed. R. Civ. P. 45(f). As the party moving for transfer, SFFA bears the burden of demonstrating that such circumstances exist. Rule 45, Advisory Committee Note to Subdivision (f) ("[T]he proponent of transfer bears the burden of showing that such circumstances are present.").

As the Advisory Committee Note to Rule 45 explains, Rule 45 requires motions to quash be filed in the district where compliance would be required in order "to protect local nonparties." Rule 45, Advisory Committee Note to Subdivision (f). And when determining whether "exceptional circumstances" exist to permit transfer to the court where an action is pending, "[t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Fed. R. Civ. P. 45 Advisory Committee's Note to Subdivision (f). "[T]ransfer is only appropriate if the interests in avoiding disruption of the issuing court's management of the

underlying litigation outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id*.

SFFA argues that this motion should be transferred to the District of Massachusetts where the underlying case is pending "because doing so will promote judicial economy, prevent inconsistent judicial decisions, and impose minimal burden on FCPS." (Opp'n at 4.) None of these are exceptional circumstances that justify transfer of the motion to quash.

*First*, and most importantly, given the Advisory Committee Note that the "prime concern" is avoiding unnecessary burden on a local nonparty, requiring FCSB to go into court in Massachusetts to litigate the motion to quash imposes an undue burden on it. It is undisputed that FCSB and TJHS are entirely local entities with all of their operations in Fairfax County, Virginia. FCPS is a public school system that serves more than 186,000 students, all of whom attend schools located in Washington Metropolitan area.[5] TJHS is a high school within FCPS that is located in Fairfax County, Virginia, with approximately 1,700 students during the 2016-2017 school year.[6] TJHS serves students from six participating school districts in Virginia: Arlington; Fairfax; Loudon; and Prince William counties and the cities of Fairfax and Falls Church.[7] FCSB and TJHS have no contact or connection with the District of Massachusetts and had no involvement in the litigation pending in the District of Massachusetts until they were served with SFFA's Subpoena. In short, FCSB—and TJHS—is the quintessential local nonparty who is to be protected by Rule 45's requirement that motions to quash be decided in district where compliance is required.

---

[5] *See* Fairfax County Public Schools, About FCPS, *available at* https://www.fcps.edu/about-fcps.
[6] *See* 2016-2017 Profile: Thomas Jefferson School for Science and Technology, *available at* https://fcps.tjhsst.edu/coursemgmt/media/300/resource/TJ%20Profile%202016-17%20online.pdf.
[7] *Id*.

As an out-of-state non-party, it is already burdensome for FCSB to expend resources defending against a subpoena in a lawsuit in which it has no involvement or interest in the outcome. But that burden is only compounded if it has to spend even more money litigating this dispute in another judicial district, which may require traveling to Boston for a hearing.

SFFA's argument that travel to Boston "will not be a heavy burden for FCPS, which has an annual budget of $2.7 billion" is not only inaccurate, but it is beside the point. (Opp'n at 6.) FCPS's budget is intended to provide educational services to its more than 186,000 students and to pay employees hired to advance FCPS's educational mission, not to shoulder discovery burdens and become embroiled in discovery disputes involving unrelated parties many states away.[8] Thus, even if SFFA were able to demonstrate exceptional circumstances warranting transfer (it cannot because none exist), FCSB's interest in obtaining local resolution of this dispute far outweighs those interests.[9]

*Second*, SFFA's argument that transfer is required to conserve judicial resources or to avoid inconsistent rulings is not supported by the Rules. "If judicial efficiency is the primary concern, transfer would almost always be appropriate to avoid multiple rulings on the same issues. The Committee notes . . . do not cite judicial efficiency as a basis for transfer." *Woods*

---

[8] *Platinum Props. Inv'r Network, Inc. v. AMCO Ins. Co.*, No. 15-mc-00213, 2015 WL 5883819, at *6 (D. Kan. Oct. 8, 2015) ("In this case, the subpoenaed Kansas lawyers have shown that transferring the motions to California will place additional and unnecessary burdens upon them."); *Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 13-00238, 2014 WL 272088, at *3 (E.D. Pa. Jan. 24, 2014) ("Because both UHS and its counsel are located in this judicial district, it would be more burdensome for UHS to litigate the instant motion in Tennessee than in this district.").

[9] As explained above, the subpoena seeks the disclosure of personally identifiable student information, and FERPA requires notice be provided to students for the purpose of allowing them to file objections. It is worth noting that the logical extension of SFFA's motion to transfer would be that any such objections by students or their guardians also should be decided by the District of Massachusetts. This would impose an undue burden and expense on those non-party students and families in Virginia.

15

*ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 408-09 (N.D. Ala. 2014). SFFA claims that "[t]he District of Massachusetts unquestionably is more familiar with the issues remaining in the case, the history of discovery, [and] the relevance of the documents sought by [SFFA]." (Opp'n at 6 (citations omitted)). But this, almost by definition, is true on every motion to quash a subpoena where compliance is required in another district; the court where the action is pending will always be more familiar with discovery issues in the case. That cannot be an exceptional circumstance to justify transfer. To the contrary, "[t]he rule requires exceptional circumstances, as demonstrated by disruption of the underlying litigation; these circumstances do not exist simply because the issuing court is in a better position to decide the motion or because that court may resolve similar issues in the future." *Woods*, 303 F.R.D. at 409. Thus, whether it is correct that "the District of Massachusetts will soon rule on issues presented by FCPS's motion" or not, Opp. at 6 (quotation omitted), that is not a sufficient basis under Rule 45 to force local non-parties FCSB and TJHS to litigate in the District of Massachusetts.

SFFA has not provided any details regarding how this Court's decision on the motion to quash would disrupt the litigation in the District of Massachusetts. Nor is it correct that the motion to quash presents any exceptional issues that require a particular familiarity with any prior discovery rulings or issues in the case. SFFA filed a lawsuit alleging discrimination against Harvard and wants broad discovery from FCSB, a public school system, about Harvard's admissions process (which should be requested from Harvard) and its perception of Harvard's admissions process (which are largely irrelevant to its claims)—and it wants the public school system to pay for the burdensome review, redaction, and production of those documents.

*Third*, SFFA's argument that transferring this action "will avoid the potential for inconsistent rulings," (Opp. at 5), is without merit. "[T]he risk of overlapping future rulings, in

16

the name of judicial economy or otherwise, does not constitute an exceptional circumstance[.]" *Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 408 (N.D. Ala. 2014). Moreover, there is no real risk of "inconsistent" rulings because the other subpoenas, and any other motions to quash, would relate to different subjects: other documents at other non-parties.

Even if this court quashes SFFA's subpoena, and another court were to rule that SFFA is entitled to some of the documents it seeks in another subpoena, SFFA will simply have received documents from some third parties but not others. The rulings would not create for SFFA or any other party or non-party the kind of inconsistent obligations that whipsaws a party and needs to be avoided. Finally, FCSB notes that the claimed risk of inconsistent rulings is really an attempt to bootstrap an exceptional circumstance from SFFA's own discovery practice. SFFA served objectionable subpoenas on schools in four different districts, and now that it has started to receive objections to those subpoenas, it is trying to use the objections to make all of those schools litigate in the District of Massachusetts. This cannot be an "exceptional" circumstance that justifies burdening FCSB with litigating in the District of Massachusetts.

The Court should deny SFFA's request to transfer the motion to quash.

## CONCLUSION

For the foregoing reasons, FCSB respectfully requests that this Court quash the Subpoena and deny SFFA's motion to transfer.

[Signature on Following Page]

Dated: April 10, 2017

Respectfully submitted,

HOGAN LOVELLS US LLP

OF COUNSEL:
Maree F. Sneed
Michele E. Gutrick
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
maree.sneed@hoganlovells.com
michele.gutrick@hoganlovells.com

By: _____/s/_____
Christopher T. Pickens (VSB No. 75307)
Park Place II, Ninth Floor
7930 Jones Branch Drive
McLean, VA 22102-3302
Tel: (703) 610-6100
Fax: (703) 610-6200
christopher.pickens@hoganlovells.com

*Counsel for the Fairfax County School Board on behalf of Thomas Jefferson High School for Science & Technology*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of April, 2017, a true and complete copy of the foregoing was filed via the court's CM/ECF system and notice of electronic filing was sent to the following counsel of record:

> J. Michael Connolly
> Bryan K. Weir
> Consovoy McCarthy Park PLLC
> 3033 Wilson Boulevard, Suite 700
> Arlington, VA 22201
> E-mail: mike@consovoymccarthy.com
> E-mail: bryan@consovoymccarthy.com

                                                /s/
                                Christopher T. Pickens (VSB No. 75307)
                                HOGAN LOVELS US LLP
                                Park Place II, Ninth Floor
                                7930 Jones Branch Drive
                                Mclean, VA 22102-3302
                                Tel: (703) 610-6100
                                Fax: (703) 610-6200
                                christopher.pickens@hoganlovells.com

                                *Counsel for the Fairfax County School*
                                *Board on behalf of Thomas Jefferson High*
                                *School for Science & Technology*